UNITED STATES of America,
Plaintiff-Appellee,

v.

William Ray MILLER,
Defendant-Appellant.

No. 81–5395
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 21, 1981.

Dean & Hartman, Denis Dean, Miami, Fla., for defendant-appellant.

Kenneth W. Lipman, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and JOHNSON and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

Appellant William Ray Miller stands convicted of conspiring to transfer unregistered automatic firearms in violation of 18 U.S.C.A. § 371, possessing unregistered automatic firearms in violation of 26 U.S.C.A. §§ 5861(d) and 5871, and possessing and transferring automatic firearms with obliterated serial numbers in violation of 26 U.S.C.A. §§ 5861(h) and 5871.

Miller's first contention on appeal centers on the trial court's decision under authority of Fed.R.Evid. 801(d)(2)(E),[1] to allow into evidence against Miller the statements of an alleged coconspirator of Miller during the course of and in furtherance of the conspiracy. When the government at trial sought to introduce the statements into evidence, Miller objected, asserting that the government had not shown that a conspiracy existed. Without substantial evidence, independent of the statement to be introduced, that a conspiracy existed to which Miller belonged, Fed.R.Evid. 801(d)(2)(E) would be inapplicable and the statement inadmissible. *United States v. James*, 590 F.2d 575, 580–81 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).[2]

After excusing the jury, the court heard the parties' arguments concerning Miller's objection. The government, as evidence of a conspiracy, pointed to a recording of a telephone conversation between Miller and the coconspirator that the judge had heard earlier on a motion *in limine*.[3] It also proffered evidence that a government agent would testify that he had received guns from the coconspirator and that the coconspirator would testify that he had received the guns from Miller. Subject to the production of the proffered testimony, the judge ruled that the requirements of *James* were met.

Miller charges that the trial court erred in failing to hold an independent hearing to consider the testimony concerning the existence of a conspiracy. *James*, Miller asserts, requires such a hearing. We disagree.

In *James* the former Fifth Circuit did consider the manner in which proof should be presented at trial. That court observed

that some courts have allowed the jury to hear statements by alleged coconspirators on the prosecution's promise later to "connect up" the statements to a conspiracy and noted that a defendant incurred no prejudice if the prosecution actually did later connect up the evidence. However, the court feared the danger of prejudice to a defendant if the prosecution did not later connect up the evidence, prejudice that a jury instruction to ignore the erroneously-admitted evidence might not eliminate, and it desired to avoid "the inevitable serious waste of time, energy and efficiency when a mistrial is required in order to obviate [the] danger" of prejudice. 590 F.2d at 582. The court therefore suggested a preferred order of proof that would entail a showing that a conspiracy existed and that the defendant was connected to the conspiracy before admitting declarations of a coconspirator.

We note, however, though the former Fifth Circuit has on occasion suggested otherwise, *see United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980), that the court did not in *James* require district courts to follow its preferred order of proof. The former Fifth Circuit explicitly stated that "[i]f it determines it is not reasonably practical to require the showing to be made before admitting the evidence, the court may admit the statement subject to it being connected up." 590 F.2d at 582. In subsequent cases the former Fifth Circuit has continued to emphasize that *James* established no inflexible rule that a hearing must be held. The hearing is a mere tool that we believe generally will, most efficiently and with least chance of prejudice to the defendant, assist the judge in his ulti-

1. Fed.R.Evid. 801(d)(2)(E) provides that a statement is not excludable as hearsay if offered against a party and made "by a coconspirator of a party during the course of and in furtherance of the conspiracy."

2. The Eleventh Circuit has recognized the case law of the former Fifth Circuit as its governing body of precedent. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981). We therefore are bound to follow the holding in *James*.

3. Miller asserts that there is "absolutely no evidence" that the trial court considered the recorded telephone conversation in deciding whether to allow the coconspirator's statement into evidence. The record flatly contradicts this assertion. The government pointed out the recording, along with its proffered testimony, as evidence of a conspiracy. The court acknowledged having heard the recording.

mate determination of whether defendant was involved in a conspiracy. A judge may mold to the circumstances of each case the procedures for showing that a conspiracy existed if he finds a hearing not reasonably practical. With this in mind, the court concluded in *United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981), after discussing the various ways in which a court might hold a hearing, that "[w]hatever be the form of a hearing, its use is merely to inform the trial court" as to whether *James* standards for use of a coconspirator's statements had been met. *Id.* at 1309. With regard to the need to hold any hearing at all, the court noted that, though

> [t]here is manifestly, greater danger of error without such information being gathered before trial commences, . . . this sort of procedure is not mandated. If the risk is run and yet, at the end of the trial, the trial judge finds, upon appropriate motion, that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the coconspirator statements.

*Id.* at 1310. Similarly, in *United States v. Ocanas*, 628 F.2d 353, 359–60 (5th Cir.), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1980), the court directly held that a trial court made no reversible error in failing to hold a *James* hearing on the admissibility of the statements of coconspirators. If the judge decides a hearing is not reasonably practical, it stated, he may admit them subject to their being connected up. If the statements are not later connected up, the court must, of course, determine whether an instruction to the jury to disregard the erroneously-admitted statement would correct the error or whether a mistrial must be declared.

■■■ As did the former Fifth Circuit in *Ocanas*, we feel in this case that the trial judge committed no reversible error in failing to hold a *James* hearing. Although Miller does not raise the issue, we conclude as well that the evidence on which the court relied met the *James* standard for showing the existence of a conspiracy.

Miller also asserts that the failure to hold a hearing prejudiced him because it deprived him of his ability to cross-examine the coconspirator later at trial since the coconspirator was presented as the last witness at trial. We find the contention frivolous. We see no logical connection between the failure to hold a hearing and Miller's inability to cross-examine the witness when he was on the stand.

Miller finally contends that the evidence the government introduced was sufficient to establish neither that the weapons he possessed and transferred were fully automatic nor that the serial numbers were obliterated when he transferred the weapons to his coconspirator.

■■■ Our standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), "a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt." *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir. 1981). In his attempt to disprove the sufficiency of the evidence for his conviction, Miller merely cites evidence that might impeach the testimony of a government witness and testimony by defense witnesses contradicting that of government witnesses. Credibility determinations are the province of the jury, not of this Court. *See United States v. Community Science Technology, Inc.*, 574 F.2d 1292, 1295–96 (5th Cir. 1978). Government witnesses testified that Miller had delivered six weapons to his coconspirator at about 11:15 a. m. and that, by noon on the same day, the coconspirator had delivered them to a government agent without serial numbers and capable of firing automatically. Although the jury heard no evidence concerning the amount of time necessary to convert a gun so that it would fire automatically and to eliminate the serial numbers, we believe it could credibly have determined beyond a reasonable doubt, even without such evidence, that the alteration and delivery of all six weapons would take more than 45 minutes. Another wit-

ness testified that Miller had inquired about whether any identifying marks remained on weapons once the serial numbers were gone and that Miller had discussed altering semi-automatic weapons into ones capable of firing automatically. Finally, Miller himself admitted that weapons such as those he sold for $600 each through his coconspirator could have been purchased in gun stores, if in semi-automatic condition, for only $400. This evidence was, we believe, sufficient to allow a reasonably minded jury to find Miller guilty beyond a reasonable doubt.

We find no error. The judgment of the district court is AFFIRMED.