UNITED STATES of America, Plaintiff–Appellee,

v.

Tommy G. ASHER, Defendant–Appellant.

No. 96–1031.

United States Court of Appeals, Seventh Circuit.

Argued May 23, 1996.

Decided Sept. 17, 1996.

Charles Goodloe, Jr. (argued), Office of the United States Attorney, Indianapolis, IN, for plaintiff–appellee.

William E. Marsh (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for defendant–appellant.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Tommy Asher, along with a number of alleged co-conspirators, was charged with conspiring to possess, alter, and transport stolen motor vehicles and with various substantive crimes involving the vehicles. Asher moved to dismiss the conspiracy count on double jeopardy grounds, claiming that he previously had been convicted for participating in the same conspiracy. The district court denied Asher's motion to dismiss, reasoning that the government's theory of the case was that the defendant had withdrawn from and subsequently rejoined the conspiracy, thereby subjecting himself to prosecution for a new offense. Asher filed an interlocutory appeal from this ruling, and we now affirm.

## I.

Beginning in 1983, Asher participated in a large car theft ring, which replaced the identification numbers in stolen cars with numbers from wrecked and salvaged vehicles and then sold the cars to unsuspecting consumers. This surreptitious scheme was eventually discovered, and, in 1990, Asher was arrested and charged with conspiracy for his role in the illegal enterprise. Asher pled guilty to the conspiracy charge and, in December of 1990, was sentenced to a term of imprisonment. Asher's guilty plea, however, may not have been an act of repentance. In 1993, after his release from incarceration, the government alleges that Asher returned to his car-stealing ways and reentered the conspiracy, which had continued in his absence.

On September 14, 1995, Asher and others in the car theft ring were indicted for conspiracy under 18 U.S.C. § 371 and for several substantive crimes. The 1995 indictment alleges that between 1983 and 1994, there was a conspiracy to possess, alter, transport, and sell stolen motor vehicles, in violation of numerous federal statutes. The indictment describes various overt acts, spanning from 1983 through 1993, which were done in furtherance of the conspiracy. Although the conspiracy charge does not expressly state that Asher at any time withdrew from or rejoined the conspiracy, the overt acts alleged in the indictment include Asher's involvement in the theft of a particular vehicle in 1993, after his release from prison. The indictment also charges Asher with substan-

tive offenses relating to the theft of this vehicle.

Asher moved to dismiss the conspiracy count, asserting that he had already been convicted for his participation in the same conspiracy and that the conspiracy charge therefore violated the Double Jeopardy Clause of the Fifth Amendment. In response to the motion to dismiss, the government acknowledged that the new conspiracy charge implicated the same car theft ring involved in Asher's prior conviction, but argued that, after his release from prison, Asher reentered the conspiratorial agreement, thereby committing a new offense for which the Double Jeopardy Clause did not bar prosecution.[1] The district court agreed with the government's position and denied Asher's motion to dismiss the conspiracy count. The court ruled that the government, in order to convict Asher of the conspiracy charge, would be required to prove that Asher rejoined the stolen vehicle ring after his original conviction. Thus the court held that the government, in accordance with its theory of the case, could only rely on events occurring subsequent to Asher's original conviction to establish the substantive elements of the charged conspiracy.

## II.

On appeal Asher presents two main grounds for reversal of the district court's decision. First, Asher asserts that the district court constructively amended the indictment. Asher maintains that, as a result, he will be held to answer a charge not contained in the indictment, in violation of the Grand Jury Clause of the Fifth Amendment. Second, Asher argues that even if the indictment is fairly read as charging his reentry into the conspiracy, the Double Jeopardy Clause prohibits such a charge because he was previously convicted of the same conspiracy.

 Before turning to the merits, a word is necessary regarding our jurisdiction in this interlocutory appeal. 28 U.S.C. § 1291 grants us jurisdiction to review all "final decisions" of district courts. It has long been the rule that "final decisions" within the meaning of § 1291 are not limited to final judgments that terminate an action. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 545, 69 S.Ct. 1221, 1224–25, 93 L.Ed. 1528 (1949). Under the collateral order exception to the final judgment rule, there exists immediate appellate review of certain district court orders prior to the conclusion of a case. *See Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497–98, 103 L.Ed.2d 879 (1989); *Cohen,* 337 U.S. at 545–46, 69 S.Ct. at 1225–26.[2] Denials of motions to dismiss on double jeopardy grounds are immediately appealable under this doctrine. *Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977). We therefore have jurisdiction over Asher's claim that the current indictment violates the Double Jeopardy Clause.

 Asher also maintains that the district court violated the Grand Jury Clause by reading a requirement into the indictment that the government prove his reentry into

---

1. A comparison of the information to which Asher pled guilty in 1990 and the indictment in the current case clearly reveals that the two prosecutions are based on the same course of illegal conduct. The 1990 information alleged the existence of a conspiracy to traffic in stolen vehicles beginning in April of 1983 and continuing through February of 1987. The current indictment encompasses the time period from 1983 to 1994 and refers to thirteen vehicles that were also included in the overt acts charged in the 1990 information. The 1990 information charged Asher with conspiring to (1) transport stolen vehicles in interstate commerce, in violation of 18 U.S.C. § 2312; (2) remove vehicle identification numbers, in violation of 18 U.S.C. § 511; and (3) possess vehicles with altered identification numbers, in violation of 18 U.S.C.

§ 2321. The present indictment alleges a conspiracy to commit those three crimes, in addition to (1) operating a chop-shop, in violation of 18 U.S.C. § 2322; (2) possessing stolen vehicles which had crossed state lines, in violation of 18 U.S.C. § 2313; and (3) committing mail fraud, in violation of 18 U.S.C. § 1341.

2. To fall within the collateral order exception, an order must (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Midland Asphalt,* 489 U.S. at 799, 109 S.Ct. at 1498 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

the stolen vehicle ring after his original conviction. The Grand Jury Clause of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury." The Supreme Court has held that the Grand Jury Clause grants defendants a "right not to be tried" only where the alleged violation is "so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment." *Midland Asphalt*, 489 U.S. at 802, 109 S.Ct. at 1500. Consequently, claims under the Grand Jury Clause may be heard on interlocutory appeal only in these very limited circumstances. *Id.* at 800–02, 109 S.Ct. at 1498–1500. The district court's alleged constructive amendment of the indictment is clearly not such a "fundamental" defect in the grand jury process as to permit immediate appellate review under *Midland Asphalt.* We thus lack jurisdiction to consider Asher's claim under the Grand Jury Clause. Furthermore, in evaluating Asher's double jeopardy claim, we must assume that the government, to convict Asher of the charged conspiracy, will be required to prove that he rejoined the stolen vehicle scheme after his original conviction.

▇▇▇ We review the district court's double jeopardy ruling *de novo. See, e.g., United States v. Furlett*, 974 F.2d 839, 842 (7th Cir.1992). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The clause "protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, —— n. 1, 114 S.Ct. 1937, 1941 n. 1, 128 L.Ed.2d 767 (1994). Simply stated, Asher argues that the Double Jeopardy Clause bars his prosecution for rejoining a conspiracy for which he has already been convicted. We are the first circuit court to consider this precise issue.

To support his claim of double jeopardy, Asher relies almost exclusively on the test first set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Blockburger* or "same elements" test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993). Asher has failed to recognize, however, that by its very terms the *Blockburger* test applies only where "the same act or transaction constitutes a violation of two distinct statutory provisions...." 284 U.S. at 304, 52 S.Ct. at 182. In this situation, the test is used as a rule of statutory construction to determine "whether Congress intended to impose multiple punishment for a single act which violates several statutory provisions." *Albernaz v. United States*, 450 U.S. 333, 338, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981).[3] At issue in this case, however, is not whether different statutory provisions should be considered the same offense. Asher was convicted in 1990 for violating the conspiracy statute, and the current indictment charges him under the same statute. Yet to succeed on a double jeopardy claim, a defendant must demonstrate that the prosecutions are for the same offense both "in law" and "in fact." *United States v. Castro*, 629 F.2d 456, 461 (7th Cir. 1980). Thus the relevant question in this case is whether the two conspiracy charges are the same "in fact," i.e., whether Asher is being prosecuted twice for the same conduct.

Prosecutions for crimes stemming from a single act do not often create disputes regarding whether a defendant has been prosecuted twice for the same conduct. For example, it is simple enough to determine if a defendant is being prosecuted twice for the same murder or for two different murders. However, the task is not as easy in a conspiracy prosecution, which centers not on a readily apparent "act," but rather on an agreement to engage in an illegal course of

---

**3.** For example, the Supreme Court has applied the *Blockburger* test to conclude that the crimes of joyriding and auto theft under Ohio law are the same offense for purposes of the Double Jeopardy Clause. *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977).

conduct. Indeed, "the precise bounds of a single conspiracy seldom will be clear from the indictment alone. The gist of the crime of conspiracy and the characteristic which defines its breadth is the unlawful agreement." *Castro*, 629 F.2d at 461 (quoting *United States v. Marable*, 578 F.2d 151, 153 (5th Cir.1978)); *see, e.g., United States v. Dortch*, 5 F.3d 1056, 1061 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). Hence the Supreme Court has cautioned that traditional double jeopardy principles should not be readily transposed from the "classically simple situation" of a discrete crime to the multilayered conduct involved in conspiracy cases. *United States v. Felix*, 503 U.S. 378, 390, 112 S.Ct. 1377, 1384–85, 118 L.Ed.2d 25 (1992) (quoting *Garrett v. United States*, 471 U.S. 773, 789, 105 S.Ct. 2407, 2416–17, 85 L.Ed.2d 764 (1985)).

■ Because the essence of a conspiracy is an agreement to commit a crime, "a determination of whether the Government can prosecute on more than one conspiracy rests on whether there exists more than one agreement." *Dortch*, 5 F.3d at 1061 (quoting *United States v. Chiattello*, 804 F.2d 415, 418 (7th Cir.1986)). We have therefore held that the Double Jeopardy Clause prohibits the government from arbitrarily subdividing a conspiracy and instituting multiple prosecutions for a single illegal agreement. *See, e.g., Dortch*, 5 F.3d at 1061; *United States v. Thornton*, 972 F.2d 764, 766 (7th Cir.1992); *Castro*, 629 F.2d at 461. Yet the government in the current case has not arbitrarily subdivided a single conspiracy. Rather, Asher entered into a new agreement to commit a crime when he decided to rejoin the stolen vehicle ring following his release from prison. Undoubtedly, Congress could have chosen to punish rejoining a conspiracy in addition to punishing the original conspiracy without

running afoul of the Double Jeopardy Clause. *Cf. Albrecht v. United States*, 273 U.S. 1, 11, 47 S.Ct. 250, 253–54, 71 L.Ed. 505 (1927) ("There is nothing in the Constitution which prevents Congress from punishing separately each step leading to the consummation of a transaction ... and punishing also the completed transaction.").[4] Asher's reentry into the conspiracy was a distinct act that could, consistently with the Double Jeopardy Clause, expose him to a new prosecution despite his prior conviction for participating in the same conspiracy. As aptly expressed by the Supreme Court, "[o]ne who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." *Garrett*, 471 U.S. at 790, 105 S.Ct. at 2417. Asher's return to his criminal behavior after his original conviction therefore leads us to conclude that the conspiracy charge in the instant case does not offend the Double Jeopardy Clause.

■ The real problem raised by this case is one of statutory interpretation. Although the Double Jeopardy Clause does not prevent Congress from creating the additional cumulative offense of rejoining a conspiracy, whether Congress did so when it passed 18 U.S.C. § 371 is another matter. The allowable unit of prosecution—"the minimum amount of activity for which criminal liability attaches"—must be determined with reference to the underlying conspiracy statute. *United States v. Allender*, 62 F.3d 909, 912 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 781, 133 L.Ed.2d 732 (1996); see *United States v. Song*, 934 F.2d 105, 108 (7th Cir.1991). The government believes that the statute allows a defendant who rejoins a conspiracy to be punished twice as much as a defendant who remained in the conspiracy all along. Asher, quite understandably, thinks

4. In this regard, it is important to note that the Double Jeopardy Clause does not prohibit successive prosecutions of an individual for distinct unlawful acts taken within a single course of criminal conduct. Moreover, there is no objective basis for ascertaining the maximum number of permissible statutory offenses implicit in a single course of criminal conduct. Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 Sup.Ct. Rev. 81, 113. Conse-

quently, "assum[ing] that any particular transaction is made up of a determinable number of constitutional atoms that the legislature cannot further subdivide into separate offenses ... demands more of the Double Jeopardy Clause than it is capable of supplying." *Whalen v. United States*, 445 U.S. 684, 701, 100 S.Ct. 1432, 1443, 63 L.Ed.2d 715 (1980) (Rehnquist, J., dissenting) (quoting Westen & Drubel, **supra**, at 113).

otherwise. However, we lack jurisdiction to resolve this issue of statutory interpretation on interlocutory appeal. We therefore AFFIRM the district court's decision.