**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4458**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERIC SCOTT, a/k/a Houlio, a/k/a Houli, a/k/a God, a/k/a U-God,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Anderson. Timothy M. Cain, District Judge. (8:15-cr-00129-TMC-1)

Argued: September 28, 2018                    Decided: January 15, 2019

Before KING, DUNCAN, and FLOYD, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Clarence Rauch Wise, Greenwood, South Carolina, for Appellant. Andrew Burke Moorman, Sr., OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2016, Eric Scott was indicted for, among other offenses, conspiring to possess with intent to distribute cocaine. Before trial, he moved to dismiss the indictment on double jeopardy grounds, claiming that he had already been convicted of—and served time for—participating in the same drug conspiracy. The district court denied his motion, and a jury convicted him. He now appeals. Because we hold that Scott's trial violated the Double Jeopardy Clause of the Fifth Amendment, we reverse the district court's denial of his motion to dismiss and remand with instructions to vacate Scott's conviction and sentence.

I.

In 2006, Scott was indicted in the District of South Carolina for conspiring to possess with intent to distribute cocaine and crack cocaine in violation of 18 U.S.C. § 841 (the "2006 indictment"). The indictment alleged that the conspiracy began "at least on or about October 1, 2005." J.A. 33. The indictment named several co-conspirators in addition to Scott, as well as "others, known and unknown to the Grand Jury." J.A. 33. It did not allege any overt facts in furtherance of the conspiracy. Scott pleaded guilty to the conspiracy and was sentenced to 60 months' imprisonment. He was released in April 2011.

In March 2015, Scott was indicted again in the District of South Carolina for conspiring to possess with intent to distribute cocaine. After returning Scott's initial indictment, the grand jury returned five superseding indictments, culminating in a final

2

superseding indictment in March 2016 (the "2016 indictment"). The superseding indictments differed from the original in several ways. While the March 2015 indictment alleged that the conspiracy began "at least in 2008," subsequent indictments moved that date back to "at least 2003." J.A. 42, 48. The named co-conspirators changed slightly with each superseding indictment, though each indictment alleged that co-conspirators included "others, both known and unknown to the Grand Jury." J.A. 43, 48, 75. Finally, in the superseding indictments, the government added charges for conspiracy to possess with intent to distribute marijuana and cocaine base (in addition to cocaine). Neither the March 2015 indictment nor any of the superseding indictments alleged any overt facts in furtherance of the conspiracy.

Scott moved to dismiss the 2016 indictment on double jeopardy grounds. He claimed that the drug conspiracy in which he was involved from 2005 to 2006—for which he had already served time—was the same as the drug conspiracy identified in the 2016 indictment. Since the charges in the 2016 indictment stretched back to 2003, Scott argued that if he were tried and convicted under that indictment, he would be punished twice for his participation in the conspiracy between 2005 and 2006.

The district court denied Scott's motion to dismiss, holding that Scott had failed to make a non-frivolous showing that the conspiracy alleged in the 2016 indictment was the same as the conspiracy in which he had participated from 2005 to 2006.[1] The case

---

[1] The district court's denial of Scott's pretrial motion to dismiss on double jeopardy grounds was appealable, *Abney v. United States*, 431 U.S. 651, 659 (1977), but Scott did not take an immediate appeal. Nevertheless, Scott did not waive his right to appeal the (Continued)

3

proceeded to trial. The jury convicted Scott of conspiracy to possess with intent to distribute cocaine but acquitted him on all other counts. Scott now appeals the district court's denial of his pretrial motion to dismiss the 2016 indictment.

## II.

We review de novo whether a criminal charge violates the Double Jeopardy Clause. *United States v. Goodine*, 400 F.3d 202, 206 (4th Cir. 2005).

## III.

"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Goodine*, 400 F.3d at 206 (quoting U.S. Const. amend. V). The clause prohibits the government from prosecuting a defendant under an indictment in which "any or all" of the charged offenses are the "'same offenses' as those charged against [the defendant] in [an] earlier indictment." *United States v. Ragins*, 840 F.2d 1184, 1188 (4th Cir. 1988). Here, the government prosecuted Scott for participating in a drug conspiracy from 2005 to 2006 (under the 2006 indictment); it later prosecuted him for participating in a drug conspiracy from 2003 to 2015 (under the 2016 indictment). If the conspiracy described

---

ruling after the facts were further developed at trial. *See United States v. Gaertner*, 583 F.2d 308, 310 (7th Cir. 1978) (holding defendant was "within his rights to delay an appeal [of pretrial double jeopardy ruling] pending final resolution of the case").

in the 2006 indictment was the same as the conspiracy described in the 2016 indictment, then Scott was subjected to double jeopardy because the prosecutions under both indictments sought to punish him for the same conduct: his participation in the conspiracy between 2005 and 2006. But if the indictments refer to two distinct conspiracies, then Scott was not subjected to double jeopardy, and we may affirm his conviction.

To resolve this question, we apply a burden-shifting analysis. The defendant bears the initial burden of making a non-frivolous showing that the government has mischaracterized a single, overarching conspiracy as multiple, distinct conspiracies. *United States v. McHan*, 966 F.2d 134, 138 (4th Cir. 1992). To satisfy this burden, the defendant must point to "substantial overlaps in the two charged conspiracies." *Id.* If the defendant succeeds, the burden shifts to the government to "prove by a preponderance of the evidence that the indictments refer to two separate criminal agreements." *Ragins*, 840 F.2d at 1192. In determining whether each side has met its burden, we look to the entire record and apply a "multi-pronged totality of the circumstances test." *Id.* at 1188 (quotation marks and citation omitted). We place particular importance on five factors:

> 1) time periods in which the alleged activities of the conspiracy occurred; 2) the statutory offenses charged in the indictments; 3) the places where the alleged activities occurred; 4) the persons acting as co-conspirators; and 5) the overt acts or any other descriptions of the offenses charged which indicate the nature and scope of the activities to be prosecuted.

*United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir. 1986).

When analyzing each factor, we bear in mind that the defendant's initial burden is not heavy. We have emphasized that "the totality of the circumstances test is to be given

flexible application so that the government may not nullify the constitutional protection against double jeopardy by artful pleading." *Ragins*, 840 F.2d at 1190; *see also Short v. United States*, 91 F.2d 614, 624 (4th Cir. 1937) ("The constitutional provision against double jeopardy is a matter of substance and may not thus be nullified by the mere forms of criminal pleading."). By the same token, because "the government controls the precision with which the second offense is charged," *Ragins*, 840 F.2d at 1192, differences that the government manufactures carry little weight in our analysis of whether it has met its evidentiary burden. In other words, the government may not reap the benefits of its own vaguely drafted indictments.

Turning now to the merits, the district court concluded that Scott had "failed to make a non-frivolous showing" that his prosecution violated the Double Jeopardy Clause, and that "even if the court were to determine that the defendant had made the initial showing . . . the government has shown by a preponderance of the evidence that the two conspiracies are distinct." S.J.A. 2307.[2] Based on our review of the *MacDougall* factors, we disagree with the district court on both points.

First, we consider the "time periods in which the alleged activities of the conspiracy occurred." *MacDougall*, 790 F.2d at 1144. Here, the time frame of the 2016 indictment, which alleged a conspiracy between 2003 and 2015, completely encompasses that of the 2006 indictment, which alleged a conspiracy between 2005 and 2006. *See*

---

[2] The Joint Appendix (J.A.) and Supplemental Joint Appendix (S.J.A.) are separate documents that make up the record on appeal.

*United States v. Jones*, 858 F.3d 221, 227 (4th Cir. 2017) (holding prosecution for conspiracy that "completely embraced the time period covered" by previous conspiracy charge violated Double Jeopardy Clause); *United States v. Jarvis*, 7 F.3d 404, 411 (4th Cir. 1993) (same). The government notes that the 2016 indictment extended several years both before and after the 2006 indictment and therefore necessarily encompassed conduct for which Scott has not yet been punished. But we are not concerned with whether the 2016 indictment covers *more* conduct than the 2006 indictment. Rather, we look to whether the 2016 indictment seeks to punish *any* of the conduct already covered under the 2006 indictment. The overlapping time frame suggests that it does.

Second, we look to the statutory offenses charged in the indictments. Both the 2006 and 2016 indictments charge Scott with conspiring to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and § 846. The government makes much of the fact that the 2016 indictment alleged that Scott conspired to possess and distribute marijuana in addition to cocaine and cocaine base. But this minor distinction does not convince us that the 2016 indictment describes a wholly separate criminal agreement from the 2006 indictment. Moreover, Scott was only convicted of conspiracy to possess and distribute cocaine.

Third, we consider "the places where the alleged activities occurred." *MacDougall*, 790 F.2d at 1144. Both the 2006 and 2016 indictments describe conspiracies that took place in the same geographic area: South Carolina. In denying Scott's motion to dismiss, the district court noted that the 2006 indictment described a conspiracy with its "hub" in Spartanburg, while the 2016 indictment described a

7

conspiracy "primarily based out of Anderson, South Carolina." J.A. 2306. This distinction is somewhat misleading. The district court observed that throughout the time period of the 2006 indictment, Scott "lived in Anderson and sold cocaine out of Anderson." S.J.A. 2306. Even if the alleged "hub" of that conspiracy was in Spartanburg, it appears that Scott's participation in the conspiracy was based largely in Anderson. Testimony at trial showed that the conspiracy described in the 2016 indictment encompassed both Anderson and Greenville, South Carolina—the latter of which is very near to Spartanburg. Thus, there is considerable geographic similarity between the indictments.

Fourth, we consider the "persons acting as co-conspirators." *MacDougall*, 790 F.2d at 1144. While Scott is the only named co-conspirator common to the 2006 and 2016 indictments, this fact is not dispositive. We may consider "whether the persons acting as co-conspirators in [the first conspiracy] were in any respect the same as those acting in the [second conspiracy], whether or not they were ultimately charged in either indictment." *Jarvis*, 7 F.3d at 411. Here, the primary drug supplier for the conspiracy described in the 2016 indictment, Joel Bello Henriquez (Bello), testified that he sold cocaine to Scott between 2003 and 2015. Their relationship fully embraces the time, place, and type of criminal activity alleged against Scott in the 2006 indictment. These similarities suggest—and the government presented no evidence to the contrary—that although Bello was not named in the 2006 indictment, he was a part of the criminal agreement charged in that indictment. *See id.* (holding that although defendant was the only co-conspirator charged in both indictments, the court "ha[d] no difficulty in

8

concluding that the persons acting as co-conspirators were in large measure the same" (internal citations and quotation marks omitted)).

Finally, we look to any "overt acts or any other descriptions of the offenses charged." *MacDougall*, 790 F.2d at 1144. Neither the 2006 nor the 2016 indictment alleges any overt facts in furtherance of the conspiracies that would allow us to assess "the nature and scope of the activities to be prosecuted." *See id.* at 1144. However, the inclusion of overt acts in the indictment is in the government's control, not Scott's. While the government was not obligated to allege overt acts in either indictment, we do not weigh the imprecise nature of the charges in the government's favor.

Based on our review of the five factors, we hold that Scott raised a non-frivolous double jeopardy claim that shifted the burden of proof to the government. The government, in turn, did not meet its burden to prove by a preponderance of the evidence that the conspiracies described in the 2006 and 2016 indictments were distinct. Therefore, the government's prosecution of Scott under the 2016 indictment violated the Double Jeopardy Clause.

IV.

The government argues that even if the 2006 and 2016 indictments describe one conspiracy, Scott's continued involvement in that conspiracy after his release from prison exposed him to new prosecution. The government relies on *United States v. Asher*, a Seventh Circuit case holding that the government can prosecute a defendant's re-entry into the same conspiracy for which he was previously convicted without violating the

Double Jeopardy Clause. 96 F.3d 270, 274 (7th Cir. 1996). The government's reliance on a theory of re-entry, however, is inconsistent with its position at trial and does not render the 2016 indictment lawful.

In *Asher*, the Seventh Circuit held that the defendant's "return to his criminal behavior after his original conviction" constituted a "new agreement to commit a crime" that exposed him to new prosecution. *Id.* In accordance with its theory that Asher re-entered a previous conspiracy, the government was limited to "rely[ing] on events occurring *subsequent to Asher's original conviction* to establish the substantive elements of the charged conspiracy." *Id.* at 272 (emphasis added). This makes sense from a double jeopardy standpoint: otherwise, the second prosecution could encompass conduct that was already covered by the first.

Here, by contrast, the government's case relied in part on alleged criminal acts that occurred well before Scott's 2006 guilty plea. In closing arguments, for example, the government claimed that evidence of Scott's participation in drug sales *before* he went to prison in 2006 was, by itself, sufficient to convict him. Hence, we are not persuaded by the government's contention that it only sought to prosecute Scott for re-entering a previous conspiracy after his incarceration.

V.

For the foregoing reasons, we reverse the district court's denial of Scott's motion to dismiss, and we remand to the district court to vacate Scott's conviction and sentence.

*REVERSED AND REMANDED*